Case 16-5165, Patricia Tumminello v. Father Ryan High School Inc. Oral argument, 15 minutes per side. Mr. Duncan for the appellant. Good morning. May it please the court, I'd like to reserve three minutes for rebuttal, please. Tony Duncan of the Tennessee Bar, of this bar. I represent the plaintiff appellant, Patricia Lauren Tumminello. We're here because the district court granted defendant's Rule 12b6 motion and dismissed my client's lawsuit. This lawsuit was originally filed pro se in state court. Then she retained me. It was filed against Father Ryan High School and the bullies and or the bullies' parents. We voluntarily dismissed all the bullies and the bullies' parents and left Father Ryan High School as sole defendant. We amended the complaint with leave of the court. That day, the defense removed it to federal court, filed a motion to dismiss. We responded to the motion to dismiss. It was granted on December 7th. Now, the claims, there's a Title IX claim and there's a state law negligence claim. You didn't do the math. How many short, was that a short span of time I didn't pay attention? It was granted within how long of the amended filing? Okay, the amended filing was in June of 2015. What's your point? It was short. Was it how long? No? Are you just trying to recant the procedure? I'm just trying to recant a little bit. It wasn't about you. You can. All right, good. I mean, we know. All right. The claims, though, that were in the lawsuit, there's a Title IX claim, there's a state law negligence claim, and both claims sought punitive damages. Then we're also making the point or taking the position that the district court erred in granting our motion to, or for leave to amend the complaint once it was of the mind that it should be dismissed. Now, it's our position that it totally meets the, and I know this is a colloquialism, but Twombly and Iqbal, I've often heard it called TWICBAL, so the TWICBAL standard. It's Plano's position that the TWICBAL standard is most certainly met, and if the district court was of the mind that it wasn't, then leave to amend should have been granted, and that's in Wright and Miller. Professor Arthur Miller and Wright and Miller talks about how that should be granted. Now, the point I want to make with this is Tennessee has rejected the TWICBAL standard. We're a notice pleading state. As recently as 2010, and that case is Webb versus Nashville Area Habitat for Humanity. We're a notice pleading state. Even with the notice pleading state, even the fact that Tennessee is a notice pleading state, to reiterate, it's Plano's position that we satisfy the TWICBAL standard, but the complaint was originally filed in state court where it's a notice pleading. So the point I want to make here is, and I know I'm a little bit sequentially out of order, is that the district court did err in granting us leave to amend because it's a non sequitur to say, well, you should have amended it before. Well, how are we going to know what faults the district court's going to find in that? There's no way to know. Well, as soon as the case was removed, you'd have been aware of any deficiency in the case, in the complaint, based on the fact that Tennessee is a notice pleading state. I think . . . I think . . . I don't know what your timing was with respect to filing the motion for leave to amend. In federal court, Your Honor? Yeah, but the district court says it consists of a single sentence. In your response brief, it does not set forth any proposed amendment or argument as to whether an amendment would meet the legal standard governing, and that's the federal rule of civil procedure that's applicable. And so don't you think that it would have been much more likely that the district court would have granted your motion for leave to amend if you had filed a separate motion setting forth the specific problems that you had identified in your complaint based on the fact that the pleading standards were different in federal court? No, and here's why. We filed our response to the motion to dismiss and combined in with that, but it complies with Rule 7, a request to amend the complaint. It wasn't just in passing. The Cuyat case that the district court cited, and I believe it's K-U-Y-A-T, operates under a different pleading standard. It's not under Rule 15 per se. It's a little more stricter because it's under the private securities litigation, the PLS. I may get the acronym wrong, but it's a higher standard, so there's no way that the plaintiff is going to know . . . I'm going to back up. Our position is that the amended complaint as it stands now satisfies the TWCBA standard. Is the one sentence the heart of some of your problem? No. Because it got our attention. One sentence seems inadequate, or appeared inadequate to the district judge. Well, all that is required in the rule is that you do it in writing. Well, all that is required in the rule, I got you. Do it in writing. Persuade the court. And we've cited probably the foremost treatise on federal civil procedure that's in our favor that says if a district court is inclined to dismiss the case, then leave to amend should be granted. If you're going to dismiss it, dismiss it without prejudice and grant us leave to amend. Would you cite the court to the treatise beyond your one sentence? I mean, that seems to be your argument that the court . . . Well, I guess that's more of a tertiary argument. The argument I want to get to, the primary and the secondary is, and I guess in the brief we were talking about requesting oral argument, that it's our position that it's a given that the district court respectfully erred in dismissing the Title IX claim. And I want to make it clear here, under the TWCPL standard, under the 12B6 standard, if a district court is going to take an inference against the non-movement, it has to take a reasonable inference in the non-movement's favor. In this case, the district court took an inference that was unfavorable to the plaintiff. Here's why. The district court assumed or inferred that plaintiff's decedent, Spencer Tate, the freshman at Father Ryan High School, was homosexual. He was not. And then the court went on to hang its hat on the statement of black letter law that Title IX does not protect against sexual harassment based upon someone's sexual orientation. And our pleadings make this clear. That's a correct statement of the law, but that's not what happened here. We have, if the court's going to take an inference, which it did here, it has to take it in the non-movement's favor. Well, we would submit that instead of taking an inference that's against the non-movement and the like most favorable, if you're going to infer, which they did, infer that he was called respectfully, and I realize I'm in a courtroom, some very unsavory names.  And he was beaten with a belt. Now, he was beaten with a belt at school. He was beaten with a belt. Counsel, your learned opponent here stands up. He's going to talk about the fact that your motion to amend didn't comply with Federal Rule 7. It didn't include grounds. What do you say to that? Well, this goes back to the argument that how are you going to know what the grounds are going to be until you know what the district court finds at fault? That's why I'm saying it's a non-sequitur. You're saying, hey, look, you should have known this. You should be prescient enough to realize what needs to be fixed before the person that's going to make the decision of what needs to be fixed tells you what's wrong. Here's a statement of what you said in connection with the motion for leave to amend. Respectfully should this court be inclined to grant the motion plaintiff hereby moves for leave to amend her amended complaint, which respectfully should be granted, and you cite the right treatise. I mean, that's not telling the district court why you might need to amend. It's not telling the district court what the substance of your amendment would be. I can't imagine that you can find a case that says that ought to be reversed. Your Honor, I believe if you look at the cites in Wright and Miller there, it would support our position. But I would also submit this, that we don't even need to get to that point, actually. Well, I mean, then you cite the rules saying a court should freely grant leave to amend. Well, that's true, but you have an automatic right to amend in federal court, and you might have told the district court some of what you said to us and some little glimmer of what you plan to do if you got to amend. Well, Your Honor, it would be our position that that's to be prudent we did that, but respectfully, it shouldn't have been dismissed. So you don't even need to really get to the amendment issue, is because this court has reminded district courts that under the TWIC law standard, that the facts alleged in a complaint don't need to be persuasive, only plausible. Has plausible claims been pled? I've only got about two minutes here I want to touch upon. There's facts that have been pleaded. Father Ryan is a private Catholic high school in Nashville, Tennessee, receives federal funding subject to Title IX, had a very, very elaborate anti-bullying policy. We quoted that anti-bullying policy from the student handbook that was in place in the complaint, along with myriad facts. There are salient facts from pages 16 through 19 of the brief that show the facts, the plausible facts that have been pleaded in the complaint. Then why would you want to amend? What more did you have? That's my exact point, though. Why didn't you just say one or two of those things instead of saying to be freely granted? We said more than that, Your Honor. I meant amended reasons, amended facts. I feel like we're on a tertiary issue instead of the primary or secondary as far as the amendment goes. Here's why. It's because in the state law claim that I wanted to address, though, the point I want to make, and I realize I've got rebuttal, but in White v. Lawrence, the Tennessee Supreme Court stated, black-letter law, that suicide is not per se an intervening claim. It doesn't break your causal chain. Especially if you have certain exceptions that apply here. What we have here is there's two exceptions, the custodial exception and the special relationship exception, which Tennessee has adopted in the second restatement of torts, 314A, that was adopted in the Satterfield case. What is that custodial relationship or special relationship? It's in loco parens. When Spencer Tate was there at the school, he was unmercifully bullied. He was new to this culture. He came from Curry, Ingram. He's a freshman there. He was bullied to the point, called him by the names, told him he should go home and kill himself, which he did. I realize my time's up, and I'll come back on rebuttals. Hey, police, court. My name is Matt Peach, Tennessee Bar, on behalf of the Appalachian Father Ryan High School. If I could start on that last point that was just raised with regard to the argument concerning a special relationship exception to Tennessee's general rule that suicide is an intervening cause. The cases that counsel cites and the reliance upon the restatement really is apples and oranges when you look at the two lines of cases talking about special relationships. Talking about special relationships in terms of the restatement, and you look at the Satterfield case and actually every case that the appellant cites, Wells v. State and Downs v. Bush, all of those are talking about the duty of care. All of those are talking about situations in which inaction can be found to be a breach of duty of care. It's not talking about an exception to the intervening cause,  and the other cases dealing with intervening cause and suicide. The special relationship that's being talked about in those cases are clearly situations dealing with, as is exemplified in that language, more akin to a patient and a doctor. Situations in which the person to whom liability is being sought would have known or reason to know of someone's risk or tendencies for suicide. So even though the term special relationship is used in both, it's really not talking about the same situation or being used in the same way. Counsel primarily focused his argument on the denial of the motion to amend, and I think we view that under the discretionary standard. Correct. But inasmuch as we know that the view about that is that it should be freely granted, what's your best argument that it was denied here? The argument is that freely granted has to be in the context of the nature of the amendment. There has to be some grounds to show that justice requires it. There has to be some grounds to show that it's not futile. Otherwise it becomes a virtually meaningless rule from the point of view of there's no standard that must be met. And I think that when he talks about the Kayyad, if I'm pronouncing that correctly, case, and talking about that being inapplicable because it was a PLSRA case, the court, I think, makes clear at the end that that's really not the reason. At the end the court says that the fact that the securities cases have a higher standard only buttresses the court's finding that a single-sentence motion to amend, that it's not error to deny that. And I think that the Evans case stands for that principle as well, that Rule 7 requires grounds. Error, abuse of discretion. Correct, correct. It's not abuse of discretion. So I think that especially when viewed from the abuse of discretion standard, I think that the district court's denial is proper and should be affirmed. Going to the Title IX issue, I think that the flaw in counsel's argument dealing with the inference or what reasonable inference should be given and whose favor it should be given. If you look at the district court's order, what the district court is saying is that there is insufficient evidence to survive a Rule 12b-6 motion. Insufficient allegations. Insufficient factual allegations. There isn't any evidence. Insufficient factual allegations. And that the only inference that could be given from the factual allegations that are made would be one of a motivation based upon sexual orientation. Now, Appellant has said that's not the inference that we wanted. But when you look at the factual allegations that are made, there is no other grounds, no other facts that are alleged that relate in any way to gender nonconforming behavior or appearance. The law that's applicable to the Title IX claim, does it change whether the child in question was in fact homosexual or perceived as homosexual, does it? No, it does not. It goes to the motivation. Perceived by the students. Perceived by the students, correct. But when you look at specifically the Vickers case that I think is the most instructive from this court on where you draw that line in terms of the inference or what the factual allegations, the minimum factual allegations that must be made, I think it's clear that it's not just even if the complaint had said that they were seeking Title IX relief under the gender nonconformance or behavior theory, which it doesn't say, that there have to be factual allegations about what the gender nonconforming behavior or appearance that was exhibited at the school, what that was. And there's nothing in the complaint, in the amended complaint about that. And I think that really is what the district court was highlighting in its reference to the reasonable inference when it said the most that could be inferred based upon the derogatory name calling was a perception of sexual orientation. And that's not actionable under Title IX. Again, speaking relative to the negligence claim, the argument that's being put forth by the appellants trying to hold the school liable for a student's suicide requires more than a just blanket allegation that in any case where bullying takes place, a school knows or should know that a particular person might commit suicide such that they could be held liable for that event. But that's inconsistent and contrary to the case law in Tennessee, both dealing with suicide as an intervening cause, but also with regard to the standard for school liability for acts of students. And all of the cases... Well, I think that probably even under the existing law, you could hypothesize an alleged fact situation where the school might well be held responsible. For example, if it had been brought to the school's attention that the bullying had occurred, if it had been brought to the school's attention what the state of mind of the student who ultimately killed himself was, and if the school had knowledge of all those things, it would probably be foreseeable to the school that something might happen like the child might commit suicide given how impulsive teenagers are. On the other hand, none of that is alleged in this complaint. But you don't think Tennessee law would preclude a finding of liability in the situation that I outlined, do you? No, I think what Tennessee law would require is specifically that point that you mentioned, that some knowledge or should have known that this particular student was at risk, had suicidal tendencies, had self-inflicting harm propensities. It probably wouldn't even have to go that far specifically, but the school might have to know something about the child's emotional state and how the child had reacted to the bullying. That is correct. And I also think one factor that is also relevant to this is that when we talk about the timeline of the events here, we're speaking of this occurred during this child's freshman year and the suicide took place in February. So we're talking about a very relatively short period of time that the child was at Father Ryan. And I think that even when you look at just cases across the country dealing with some allegation of liability for bullying, that you often find much more pervasiveness and duration of time that support those cases. The idea that he was hit with a belt seems pretty darn egregious to me, but is that part of the bullying or is that the custom at this school? Obviously at this point we're limited to just the allegations in the complaint, but I don't believe that there's any allegation of multiple occurrences. It sounded like it might be the way they do business there. I don't know. Never mind. Well, we've seen a couple of these cases recently where it appears that the school is at least very inattentive and sometimes encouraging of that kind of conduct by students, but that's not really alleged in this case. It's not alleged in this case, and I would note that that incident that's alleged is also alleged to have occurred when the students were unsupervised so that there were no teachers around when that is alleged to have taken place. Your Honor, I think that the district court's holdings in this case are completely consistent with this court's precedent as well as Tennessee State Court precedent in all the areas that are alleged. If this court doesn't have any further questions, I'd ask that the court affirm the district court's ruling. Mr. Duncan. Again, may it please the Court. One of the exceptions under Tennessee law to whether or not suicide is an intervening cause is, again, a custodial relationship and or special relationship. We've cited this in our brief in Section 314A of the Restatement, which is adopted by the Tennessee State Court. Assuming that the special relationship exists, that doesn't relieve you of establishing foreseeability in a particular incident. It's not strict liability for people who have a special relationship. It's not, but then that may be a question more appropriate for most of a summary judgment, not under Rule 12B6. Well, you've got to allege foreseeability. You've got to allege proximate cause. Foreseeable. And this goes to the state law claim as the proximate cause, and this goes to the Title IX claim. Father Ryan High School in 2010, three, four years before this suicide occurred, got a Dear Colleague letter from the Department of Education, from the OCR. Is that the complaint? It's not, and I'll tell you why it's not. That specifically stated that student-on-student bullying could lead to victim suicide. Now, we've also cited in our papers, too, that there's a Sixth Circuit case from other circuits that say that it doesn't have to be in a complaint for Rule 12B6 if it's a matter of common knowledge or public record. These are public records. That's the point we made to the district courts. In 2010, almost four years before— So you believe that the requirement is that every school make sure no bullying occurs, and if it fails to do so, it's responsible for anything that happens to a student? No, and that would be an unworkable standard, I would submit, because you can't do that. That's just against human nature. But the Stiles case, Stiles X-Rail DS versus Granger County, Tennessee, which is in part a Title IX case that came out from this court earlier this year, talks about, goes through and sets forth the prima facie, what has to be pleaded to plead a Title IX complaint or claim. We did that here. Now, what this court found in Stiles was that the court was not deliberately indifferent. What makes that—or not that the school was. The difference here is that Father Ryan, as a recipient of federal funds, was deliberately indifferent. And I also want to make two points real quick. I'm almost running out of time. White versus Lawrence, and Judge Trauger's opinion, Smith versus Fizer, talk about how the school didn't have to know the mental state of the student. It's whether or not the focus is supposed to be whether or not their negligent conduct made that suicide likely based upon the student-on-student bullying. Also, I would submit that Vickers is inapposite. It shouldn't apply. Does it have to be likely? Pardon? You said it makes it likely. Yes, if you read White versus Lawrence. If you'll read—I might paraphrase in a little bit. But Vickers is a Title VII case, whereas this case is more like Vance and Phillips, where you're talking about the name-calling and the physical abuse, especially in Vance, because he was beaten with a belt. And the one last thing I want to leave is when we were doing our investigation— I thought it was pretty clear that the Title VII body of authority was being used to analyze Title IX cases. You're correct on that. Well, I wrote the opinion in Vickers, and I would say it's applicable here, like it or not. Would it be distinguishable? And here's why. Because the plaintiff in Vickers was trying to bootstrap— and that language is used in the opinion— trying to, in essence, make a claim for being a homosexual and getting harassed for being a homosexual at work. But he exhibited no gender nonconforming behavior at work, whereas here— I don't even know that Mr. Vickers claimed to be homosexual. Well, he said he was a little coyish about it. He never really came out, but that's— I think Mr. Vickers' claim was that he was either— I don't know that he said, oh, I am either homosexual or perceived to be homosexual, but I think the claim was based on perceived homosexuality without any specifications as to whether that was actually the case. His co-workers knew that he was. Or thought he was. Thought he was. But my time is up. I'd like to thank the Court. I appreciate your time. Further questions? Anything else? All right. We thank you both for your argument, and we'll consider the case carefully.